UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

LATCHMIE TOOLASPRASHAD,        :
                               :    No. 4:CV-05-0168
          Plaintiff,           :
     vs.                       :    Complaint filed 07/30/99
                               :
BUREAU OF PRISONS,             :    (Judge Muir)
                               :
          Defendant            :    (Magistrate Judge Smyser)


ORDER

September 2, 2005

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On July 30, 1999, Plaintiff Latchmie Toolasprashad, an inmate in the custody of the Federal Bureau of Prisons, filed this action in the United States District Court for the District of Columbia.  The proceedings in that court included the filing of dispositive motions and an appeal by Toolasprashad to the United States Court of Appeals for the District of Columbia Circuit. *See* Toolasprashad v. Bureau of Prisons, 286 F.3d 576 (D.C. Cir. 2002).  Toolasprashad is proceeding *pro se* and *in forma pauperis*.

As a result of the rulings in those courts, all but one of Toolasprashad's claims were resolved in favor of the Defendants. In his only remaining claim, Toolasprashad alleges that the Bureau of Prisons violated the Privacy Act, 5 U.S.C. § 552a, when it transferred him to a correctional institution far from his parents' home, and it reclassified him as a "special offender"

based upon false information in a Bureau of Prisons's memorandum.

On October 18, 2002, the Federal Bureau of Prisons filed in the United States District Court for the District of Columbia a motion for summary judgment with respect to that claim or, in the alternative, to transfer the case to this court.  By order dated July 29, 2003, the United States District Court for the District of Columbia transferred the matter to this court.  In its order the court "decline[d] to reach the merits of the case and therefore [left] resolution of the summary judgment motion to the transferee court." (Order of July 29, 2003, p. 2, n.1)

The Clerk of Court assigned this case to us but referred it to Magistrate Judge J. Andrew Smyser for consideration.  Although the order transferring this case was entered on July 29, 2003, the case file was not received in this court until March 22, 2005.  On April 15, 2005, Magistrate Judge Smyser filed a report recommending that the summary judgment motion be granted and the case closed.

After being granted an extension of time in which to do so, on July 18, 2005, Toolasprashad filed the following documents: 1) "Plaintiff's Request to Accept Overlength [sic] Combined Objections and Brief to the Report and Recommendation and Notice to Court"; 2) "Plaintiff's Combined Objections and Brief to the Report and Recommendation"; and 3) exhibits in support of those objections.  On August 2, 2005, the Bureau of Prisons filed a

brief opposing Toolasprashad's objections.  On August 3, 2005,
Toolasprashad filed "Plaintiff's Supplemental Motion and Brief To
Plaintiff's Combined Objections and Brief to the Report and
Recommendation."  On August 11, 2005, Toolasprashad filed
"Plaintiff's Second Supplemental Combined Motion and Brief to
Plaintiff's Combined Objections and Brief to the Report and
Recommendation."  On August 22, 2005, Toolasprashad filed a reply
brief, thereby ripening his objections for disposition.

When objections are filed to a report of a Magistrate Judge,
we make a *de novo* determination of those portions of the report
or specified proposed findings or recommendations made by the
magistrate judge to which there are objections. United States v.
Raddatz, 447 U.S. 667 (1980); 28 U.S.C. §636(b)(1); M.D. Pa.
Local Rule 72.31.  Furthermore, district judges have wide
discretion as to how they treat recommendations of the Magistrate
Judge. Id.  In providing for a *de novo* review determination
rather than a *de novo* hearing, Congress intended to permit
whatever reliance a district judge, in the exercise of sound
discretion, chooses to place on a Magistrate Judge's proposed
findings and recommendations. Id.  *See also* Mathews v. Weber, 423
U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir.
1984).

As a threshold matter we note that the Bureau of Prisons has
not objected to the length of Toolasprashad's combined objections

and supporting brief (consisting of forty-two pages) or to the
documents he filed on August 3, 2005 (entitled "Plaintiff's
Supplemental Motion and Brief To Plaintiff's Combined Objections
and Brief to the Report and Recommendation"), or the document
filed on August 11, 2005 (labeled "Plaintiff's Second
Supplemental Combined Motion and Brief to Plaintiff's Combined
Objections and Brief to the Report and Recommendation").  In the
absence of any objection to those documents, and in light of
Toolasprashad's *pro se* status, we will reluctantly consider those
filings in their entirety in our *de novo* review of the Bureau of
Prisons's motion for summary judgment.

Summary judgment is appropriate only when there is no
genuine issue of material fact which is unresolved and the moving
party is entitled to a judgment as a matter of law. Fed. R. Civ.
P. 56(c).  Summary judgment should not be granted when there is a
disagreement about the facts or the proper inferences which a
fact finder could draw from them. Peterson v. Lehigh Valley Dist.
Council, 676 F.2d 81, 84 (3d Cir. 1982).  "When a motion for
summary judgment is made and supported as provided in ...[Rule
56], an adverse party may not rest upon mere allegations or
denials of the adverse party's pleading...."  Fed. R. Civ. P.
56(e).

Initially, the moving party has a burden of demonstrating
the absence of a genuine issue of material fact. Celotex

4

Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the adverse party must show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of his or her case that a reasonable jury could find in its favor. Celotex Corporation vs. Catrett, 477 U.S. 317, 322-23 (1986).

When addressing a motion for such a judgment, our inquiry focuses on "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(emphasis added). As summarized by the Advisory Committee On Civil Rules, "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee note to 1963 Amendment.

5

We will apply those principles to the Bureau of Prisons's motion for summary judgment.  Before doing so, however, we will set forth the undisputed material facts relating to Toolasprashad's sole remaining claim.

Toolasprashad arrived at the Federal Correction Institution at Allenwood (hereinafter "Allenwood") on October 17, 1994.  On January 27, 1995, he received an Incident report charging him with, *inter alia*, "insolence towards staff."  The underlying incident is described in the report as follows:

> On 01/27/95 at approximately 09:10 a.m. I was giving Inmate Toolasprashad a legal call.  I informed him that he could call his lawyer but not his congressman as he requested. Inmate Toolasprashad became irate stating I'll get you motherfuckers give me a BP8.

(January 27, 1995, Incident report, p. 1)  The Disciplinary Hearing Officer concluded that Toolasprashad had committed the charged offense and he sentenced Toolasprashad to two weeks of extra duty and the loss of commissary privileges for two weeks.

In an incident report dated March 10, 1995, Toolasprashad was charged with "conduct which disrupts or interferes with the orderly running of the institution which most resembles lying or providing false information to a staff member."  The underlying incident at issue in that report is described as follows:

> ... [T]he S.I.S. received a copy of a written correspondence sent from Inmate Toolasprashad to his Unit Team in which he alleges he was "sexually and brutally molested by my unit team, ...."  On 02/24/95 at approx. 1:30 p.m., Inmate Toolasprashad signed a medical treatment refusal which stated, [sic] "... I have not been sexually attacked or

6

> molested by anyone at this institution, ....”  This is the
> second time Inmate Toolasprashad provided false information.
> ...

(March 10, 1995, Incident Report, p. 1)  At the disciplinary

hearing on that charge, Toolasprashad stated that he did not

intend the statement that he was “sexually and brutally molested”

to be taken literally.  The Disciplinary Hearing Officer

concluded that Toolasprashad had committed the offense as charged

and sentenced Toolasprashad to 15 days disciplinary segregation

and loss of commissary privileges for 60 days.

While incarcerated at Allenwood, Toolasprashad worked in the

Education Department assisting inmates.  On December 22, 1995,

Jack Marquis, then Acting Supervisor of the Education Department,

wrote a memorandum in which he requested that Toolasprashad’s job

be changed.  Marquis states the following in the memorandum:

“[t]his job change is based on Toolasprashad being resentful and

hostile to supervision and instruction”; Toolasprashad’s “ability

to work with education staff is negative, hostile, and annoying”;

and Toolasprashad’s “conduct is having a negative affect on his

ability to be a liaison between students and staff in the

department.” (Marquis Memorandum of December 22, 1995)

On June 12, 1996, Warden Margaret Harding sent a memorandum

to the Regional Director of the Northeast Region of the Bureau of

Prisons requesting that Toolasprashad be transferred to another

institution.  Warden Harding requested the transfer

> based on Mr. Toolasprashad's poor adjustment at this
> facility since his arrival on 10-17-1994.  Mr. Toolasprashad
> is unable or unwilling to properly relate to a significant
> number of staff despite our sincere efforts to establish a
> professional relationship.  He will not communicate verbally
> to members of his unit team and believes that the
> administration is not responsive to his needs.  We believe
> that his unwillingness to communicate hinders his
> programming here.  A transfer to another appropriate
> facility will allow him to develop a more positive
> relationship with staff and provide an atmosphere more
> conducive to programming.

Toolasprashad was not transferred as a result of that request.

On November 1, 1996, Toolasprashad was placed in

Administrative Detention pursuant to an order

> for INSOLENCE TOWARDS STAFF.  Insolence towards a staff
> member creates disrespect for authority and undermines
> staff's ability to control their area of responsibility, and
> properly maintain the security of their area and the
> institution.  Such conduct will not be tolerated.

(Memorandum of November 1, 1996)(Emphasis in original)

On August 25, 1997, Lieutenant Joseph Reed, a Special

Investigative Supervisor, prepared a memorandum recommending that

Toolasprashad be transferred to another institution.  Reed states

in the memorandum that the transfer is sought because of

Toolasprashad's poor institutional adjustment, his familiarity

with and attentiveness towards certain staff members and prior

incidents involving Toolasprashad.  Reed further asserts that

Toolasprashad continually harassed and attempted to intimidate

staff at Allenwood.  Reed's memorandum notes that

> [d]ocumentation exists within Inmate Toolasprashad's Central
> File, the Education Department, and the [Special
> Investigative Supervisor] Office to support the position of

8

the [Special Investigative Supervisor] Office that Inmate
Toolasprashad has continually harassed and attempted to
intimidated [sic] staff since his arrival to [sic] this
institution.

(Reed Memorandum of August 25, 1997, p. 2)

The final item to consider is the memorandum written by J.
Adami and submitted to the Northeast Region of the Bureau of
Prisons on or about September 8, 1997, which is the only document
Toolasprashad cites in support of his Privacy Act claim.  Adami
prepared the memorandum "based upon [his] belief that inmate
Toolasprashad was having problems adjusting to the institution,
and a report of the Special Investigative Supervisor (SIS) which
confirmed [his] belief." (Adami Declaration, p. 1, ¶4)  Because
it forms the entire basis of Toolasprashad's Privacy Act claim,
we will quote the entire relevant portion of the document.  The
document provides in relevant part as follows:

> Rationale for Redesignation: On August 25, 1997, the SIS
> completed an investigation regarding the disruptive behavior
> displayed by Inmate Toolasprashad.  Specifically, Inmate
> Toolasprashad has a significant documented history of
> harassing and demeaning staff members at this institution.
> Inmate Toolasprashad arrived at this facility on October 17,
> 1994.  Since his arrival, there have been four (4) separate
> SIS investigations relating to his manipulative behavior.
> Staff members at this facility have sincerely encouraged
> Inmate Toolasprashad to program properly at this facility.
> However, he has continued to demonstrate a personal
> vendetta.  It should be noted that he has been denied a
> transfer for Adjustment purposes, Code 330, on two (2)
> separate occasions.  In his most recent denial it was
> recommended that he be submitted as a Close Supervision
> Transfer, if appropriate.  Although we are not suggesting
> that Inmate Toolasprashad is prohibited from expressing his
> opinions, he has clearly disrupted the orderly running of
> this institution.  We concur with the SIS Office, and

9

recommend a Close Supervision Transfer, Code 323.

(Memorandum of September 8, 1997)  A "Close Supervision

Transfer," or "Code 323 Transfer,"

> is used to remove an inmate from an institution as a result
> of disciplinary problems which are not severe enough to
> warrant an incident report, or which do not fit into any
> specific code of misconduct.  In other words, inmate
> Toolasprashad was transferred from FCI-Allenwood because of
> his generally disruptive nature to the security and safe
> operations of the institution.

(Adami declaration, p. 1-2, ¶¶4, 5)  In further support of the

September 8, 1997, memorandum, Adami asserts in his declaration

that "[a]dditionally, inmate Toolasprashad had given the

impression to both staff and inmates that he may have been

involved in an improper relationship with a staff member." (Id.,

p. 2, ¶10)

With those facts in mind, we turn to the elements of a

Privacy Act claim.  A plaintiff pursuing such a claim is required

to establish that

> (1) he has been aggrieved by an adverse determination; (2)
> the [agency] failed to maintain his records with the degree
> of accuracy necessary to assure fairness in the
> determination; (3) the [agency]'s reliance on the inaccurate
> records was the proximate cause of the adverse
> determination; and (4) the [agency] acted intentionally or
> willfully in failing to maintain accurate records.

Deters v. U.S. Parole Comm'n, 85 F.3d 655, 657 (D.C. Cir. 1996)

(citing Dickson v. Office of Personnel Management, 828 F.2d 32,

37 (D.C. Cir.1987); Rose v. United States, 905 F.2d 1257, 1259

(9th Cir.1990)).

10

For the purposes of this order, we will consider Toolasprashad to have fulfilled the first element.  His transfer and redesignation were adverse determinations.

The second element, concerning the accuracy of the questioned record, "depends on whether the 'truth' underlying the challenged statements 'is clearly provable or relatively easily discernible.'" Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 583 (D.C. Cir. 2002).  Courts have held that "where truth can readily be ascertained, it is 'feasible, necessary, and proper, for the agency and, in turn, the district court to determine whether each filed item of information is accurate." Id. (quoting Deters v. United States Parole Comm'n, 85 F.3d 655, 658 (D.D.C. 1996); Doe v. United States, 821 F.2d 694, 699 (D.C. Cir. 1987)). In other cases,

> where truth is harder to determine, "neither the agency nor the court ... is required to 'find and record truth.' Instead, it suffices to 'adjust [the] file equitably to reveal actual uncertainty.'"

Id. (quoting Doe, 821 F.2d at 701).

The Privacy Act distinguishes "records" from "decisions" and it "does not permit a court to alter documents that accurately reflect an administrative action, no matter how contestable the conclusion may be." Douglas v. Agricultural Stabilization & Conservation Service, 33 F.3d 784, 785 (7th Cir. 1994).  The statute "is not ... a vehicle for amending the judgments of federal officials or of other parties as those judgments are

11

reflected in records maintained by federal agencies." Pellerin v. Veteran's Admin., 790 F.2d 1553, 1555 (11th Cir. 1986).

We are of the view that Adami's memorandum of September 8, 1997, contains a combination of subjective judgments and objective, factual assertions.  We will apply the appropriate standard to each challenged aspect of the document.

Toolasprashad contends that Federal Bureau of Prisons should not have relied upon the September 8, 1997, memorandum to transfer him from Allenwood or reclassify his inmate status.  He specifically alleges that

> [t]he "entire" memo of September 8, 1997, was completely
> fabricated by the defendants which was adversely used
> against the plaintiff, ie [sic], midnight retaliatory
> transfer, catagorized [sic] as a special offender,
> discriminated against for work and program assignments, etc.

(Complaint, p. 7, ¶13)

Magistrate Judge Smyser reasoned that the Bureau of Prisons is entitled to summary judgment on Toolasprashad's Privacy Act claim because the evidence of record sufficiently confirms each material assertion set forth in the September 8, 1997, memorandum.  Because Toolasprashad's objections track the Magistrate Judge's analysis, we will also consider each challenged statement in the memorandum of September 8, 1997.

Before doing so, we are compelled to address one additional threshold matter.  Toolasprashad states in the second paragraph of his objections that he

12

does not have in possession the necessary records to file
this objections [sic] and in order to meet the Court's
deadline he is submitting same.   During searches of
plaintiff's living area over the years the records/files
have been taken by guards, [a] little at a time.

(Objections, p. 1)

Toolasprashad has filed literally hundreds of pages of
documents in this case, including a substantial number of
documents in response to the Bureau of Prisons's summary judgment
motion.   He fails to identify either the guards allegedly
responsible for the thefts, or the type of documents allegedly
taken.   Because the record to be considered is essentially the
one developed before the United States District Court for the
District of Columbia, we summarily reject Toolasprashad's
contention that he was, for any reason, unable to respond
adequately to the Magistrate Judge's Report and Recommendation.
We will proceed to consider the merits of his objections, all of
which focus on the information presented by the Bureau of Prisons
to support the assertions made by Adami in his memorandum of
September 8, 1997.

Toolasprashad challenges the Bureau of Prisons's ability to
rely on any of the documents it references and has presented to
the court.   The specific documents are the Incident Report dated
January 27, 1995; the Incident Report dated March 10, 1995; the
decision issued by the Disciplinary Hearing Officer as a result
of that report; the December 22, 1995, memorandum in which

13

Marquis requests that Toolasprashad's job be changed; the June 12, 1996, memorandum from Warden Harding in which she requests that Toolasprashad be transferred to another institution; the November 1, 1996, detention order; and the August 25, 1997, memorandum concerning the S.I.S.'s investigations into Toolasprashad's conduct while at Allenwood.  We hereinafter refer to those documents collectively as the "supporting documents."

Toolasprashad contends that each supporting document is "inaccurate," "incorrect," "blatantly false," an "outright lie," a "pure fabrication," or does not actually exist in his file.  In essence, Toolasprashad's objections to the Magistrate Judge's Report and Recommendation constitute an attempt to splinter his one Privacy Act claim into numerous separate Privacy Act challenges to the accuracy of each and every supporting document cited by the Bureau of Prisons.

As a matter of law, he is precluded from challenging the supporting documents because he has not addressed, let alone fulfilled, the requirement that he exhaust his administrative remedies with respect to each and every challenged document. *See* 5 U.S.C. §§ 552a(d)(2) and (d)(3); Duke v. U.S. 305 F. Supp.2d 478, 488 (E.D. Pa. 2004)(DuBois, J.)("Although the Privacy Act does not expressly require a plaintiff to exhaust administrative remedies prior to filing a civil suit,'that requirement has been imposed by the courts as a general principle of administrative

14

law.'")   The only document referenced throughout Toolasprashad's complaint and administrative documents is the memorandum of September 8, 1997, the memorandum from Adami to the Northeast Region of the Bureau of Prisons.

Moreover, as a factual matter, the majority of the sources that Toolasprashad references to dispute the accuracy of the supporting documents are hearsay statements from other individuals.  With respect to the precise contents of his file he concedes that he "does not control the file and could only tell the Court what his review of the records yield [sic] and what his Unit Team guards also informed him of." (Objections, p. 27) Toolasprashad has failed to support with competent evidence his challenges to the supporting documents.

For the reasons stated above, Toolasprashad may not expand the scope of his claim as he has attempted to do in his objections.  The sole remaining claim in this case is based strictly on whether the representations asserted by the Bureau of Prisons in Adami's memorandum of September 8, 1997, are sufficiently accurate to withstand the scrutiny imposed by the Privacy Act.  We will deny Toolasprashad's implicit effort to expand the scope of this case to encompass a challenge to the accuracy of each and every supporting document cited by the Bureau of Prisons.  That conclusion, in and of itself, is sufficient to overrule all of Toolasprashad's objections, adopt

15

Magistrate Judge Smyser's Report and Recommendation, and grant
the Bureau of Prisons's motion for summary judgment.

However, out of an abundance of caution we will proceed to
review the substantive merits of Toolasprashad's claim that he is
entitled to damages because of the inaccuracies in the memorandum
of September 8, 1997.

The first comment in the memorandum to consider is that
"[s]pecifically, Inmate Toolasprashad has a significant
documented history of harassing and demeaning staff members at
this institution."  The Court of Appeals for the District of
Columbia Circuit emphasized by italicizing the word "documented"
in its review of that statement. Toolasprashad v. Bureau of
Prisons, 286 F.3d 576, 583 (D.C. Cir. 2002).

The issue of whether or not documents exist to support that
conclusion is a factual one.  The supporting documents in the
record establish the accuracy of the factual component of that
statement.  The issue of whether those documents pertain to
Toolasprashad "harassing and demeaning staff members" is a
subjective determination that is not necessarily based on
historical facts.  We are of the view that the manner in which
Adami characterized the behavior at issue in the supporting
documents constitutes an opinion or a judgment which is not
subject to review under the Privacy Act. *See* Reinbold v. Evers,
187 F.3d 348, 361 (4th Cir. 1999)(an agency official's opinions

16

"may be subject to debate, but they are not subject to alteration under the Privacy Act as long as the opinions are recorded accurately"); White v. office of Personnel Management, 787 F.2d 660, 662 (D.C. Cir. 1986)(discussing agency's ability to retain and rely upon a record containing a subjective evaluation).

The next statement to consider is that "[s]ince his arrival, there have been four(4) separate SIS investigations relating to his manipulative behavior."  The portion of statement concerning the number of investigations is purely factual.  It is adequately supported by the August 25, 1997, memorandum written by Reed, in which each investigation is discussed.  The portion describing Toolasprashad's behavior as "manipulative" is a subjective judgment.  Magistrate Judge Smyser determined that the Bureau of Prisons's description of Toolasprashad's behavior as "manipulative" is a subjective assessment that is not subject to judicial review under the Privacy Act. Such a determination is supported by the record and we agree with it.

The next two statements to consider are that "[s]taff members at this facility have sincerely encouraged Inmate Toolasprashad to program properly at this facility.  However, he has continued to demonstrate a personal vendetta." (Memorandum of September 8, 1997, p. 1)  Although Toolasprashad attempts to characterize those sentences as being directed at the number of classes he has taken and how well he has done in them, there are

17

other ways to interpret that text.  The Privacy Act does not require an agency to support every conceivable manner in which a record may be interpreted.

Adami explains the thrust of those statements in his sworn declaration.  He states that "Toolasprashad often sabotaged his own attempts at programming by harassing staff and making false accusations." (Adami Declaration, p. 2, ¶9)  We are of the view that the cited sentences read together relate more to Toolasprashad's behavior and attitude, as opposed to any other objectively verifiable facts.  When viewed as such the statements constitute an opinion.  Based on the evidentiary record submitted to us the opinion is sufficiently accurate.

The final statements to consider in the September 8, 1997, memorandum are that Toolasprashad "has clearly disrupted the orderly running of [Allenwood]," and that he "is considered to be a management problem based on his blatant disrespect for authority." (Memorandum of September 8, 1997, pp. 1-2)  The former statement is supported by the four investigations conducted by the Special Investigative Supervisor into Toolasprashad's conduct.  The latter reflects an opinion which is sufficiently accurate to withstand Toolasprashad's Privacy Act claim.

No reasonable trier of fact could conclude that any material statement in the memorandum of September 8, 1997, is sufficiently

inaccurate to entitle Toolasprashad to any relief pursuant to the Privacy Act.  The Bureau of Prisons is entitled to summary judgment on Toolasprashad's Privacy Act claim.  We will grant its motion for that relief.

NOW, THEREFORE, IT ORDERED THAT:

1.    Toolasprashad's objections (Document 14) to Magistrate Judge Smyser's Report and Recommendation are overruled.

2.    Magistrate Judge Smyser's Report and Recommendation (Document 2) is adopted *in toto*.

3.    The Bureau of Prisons's motion filed on October 18, 2002, for summary judgment is granted.

4.    The Clerk of Court shall enter judgment in favor of the Federal Bureau of Prisons.

5.    The Clerk of Court shall close this case.

6.    Any appeal of this order shall be deemed frivolous, without probable cause, and not taken in good faith.

s/Malcolm Muir
MUIR, U.S. District Judge

MM:ga